TUCKER, Judge.
Upon the whole of the testimony, I think the fact of both marriages is proved ; and if the question turned entirely upon those facts, I should be of opinion that the judgment of the district court ought to be affirmed. 4 Burr. 2059; 1 Black. Rep. 632; 1 Black. Com. 440, 457; 5 Rep. 98; 2 Black. Com. 436 ; 1 Salk. 120; 3 Eev. 410; Bull. Nis. Pr. 112; 2 Esp. 209. But the act of assembly, which declares, that “The issue of marriages deemed null, in law, shall nevertheless be legitimated,” does, in my apprehension, apply to the daughters in this case, notwithstanding all that was urged to the contrary. The father did not die until after the commencement of that act: The rights of the daughters to his property did not commence until his death: The question, as between these parties, did not, nor could it exist, until (.hat event; and the act was then in full operation. The words null and void, arc perfectly convertible terms, and mean the same thing. The widow of the son was not entitled to administration, in preference to the daughters, had she even administered upon the son’s estate, which does not appear. Nor could she, as guardian to the grand children, have been entitled to any preference, had she been appointed guardian before administration granted, which was not the case. The act of 1785, it should be remembered, relates to the disposition of property only; and proceeds to shew who shall be admitted to share the property of a person dying intestate, notwithstanding any former legal bar to a succession thereto. And, in that light, the law ought to receive the most liberal construction ; it being evidently the design of the legislature, to establish the most liberal and extensive rules of succession *to estates, in favour of all, in whose favour the intestate himself, had he made a will, might have been supposed to be influenced. And here there-can be no doubt, had he died testate, that these daughters would have been the first objects of his care. I am therefore of opinion that the appellants are entitled to the administration ; and that the judgment ought to be reversed.
ROANE, Judge.
This is a mere civil controversy to ascertain the right of property. The right of administration is chiefly important as it depends on, and decides the right of property.
Considered as a civil controversy, and keeping the first marriage out of view, for the present, there is no doubt but that the appellants might shew their legitimacy under the last marriage on reasonable testi *910 mony. I mean that they should not be driven to that rigour of proof which is necessary in actions of criminal conversation, and prosecutions for bigamy. The constant practice in questions of legitimacy, depending on a single marriage, bears out this idea.
The appellees, however, not satisfied to rest their case on the defect of proof of the actual celebration of the second marriage, set up the pretext of a former and subsisting marriage. They do not do this on the ground of crime, nor could any thing proved or adjudged in this proceeding affect the parties to the second marriage, even if they were living: They set up the first marriage merely to shew a want of power' in the wife to consent to the second, which therefore is supposed to be void. They do not take a stronger ground than they would had they alleged infancy or idiocy, which would equally make void the second marriage, and for the same reason; a want of power or capacity to consent to the contract.
The appellees also, on their part, in proving the existence of the first marriage, find it necessary to claim an exemption from the standard of rigid proof. They are also entitled to it; for, in every branch of this proceeding, we go by *those doctrines of evidence, which relate to questions of property, and not to criminal proceedings, or actions in nature thereof. The appellees on their part claim under the same defect of positive testimony, or a greater, than the appellants; but, in both cases, the proof is satisfactory to my mind. I Have no doubt upon the testimony but that both marriages were celebrated; and that the first existed at the time of celebrating the last.
The second marriage, therefore, was not lawful; it was even void; but we cannot, in this case, say that it was criminal. Circumstances may exist, such as a belief of the death of the first husband, or a seven years absence by him, which may render the second marriage even innocent. We are bound to consider this marriage innocent, for we cannot, in this proceeding, enquire into its guilt. But if it were otherwise, if the legislature should even be supposed to consider every second marriage, living a first husband or wife, as criminal, wherefore should they visit the sins of the parents upon the innocent and unoffending offspring? But this was not the temper of the legislature. In the case of incestuous marriages, where tjhe parties with full knowledge of the everlasting bar which does and ought to exist between them, enter into this contract, and produce an innocent offspring in defiance of laws human or divine ; where you cannot suppose a circumstance of excuse, except the scarcely possible one of an ignorance of the consanguinity which exists between- the parties, their offspring is not bastardized by our laws, on the contrary- it is expressly provided (New Code, 195, $ 13) that the nullification of such marriages shall not be construed to render the issue illegitimate.
This is a strong case to shew the sense of the legislature, that the turpitude, or guilt of the marriage, shall not break upon the heads of-their innocent offspring. But there is even a stronger case yet; and that is, that the children of a man and woman, who afterwards intermarry, if recognized by him, shall be thereby legitimated. (New Code, 170, $ 19.) *It is important also, that this provision immediately precedes the sentence in question, which is a part of the same clause, and connected therewith by the word “also.” If the legislature has legalized children begotten in open fornication, where there is no marriage or semblance of a marriage, it is a reasonable presumption that they at the same moment, and by the same clause meant also to include the offspring of marriages, which, though void in law, and unfortunate, may be nevertheless excusable, and even innocent.
Considering too, that, in our present view, the first marriage only produced an incapacity to consent to the second, a contrary construction would - seem to involve, (as standing on the same principle,) the offspring of marriages contracted during a state of infancy or idiocy, although these impediments might long had ceased, and the parties lived happily together at, and after the time of the birth of their offspring. The construction I contend for, taken in connexion with the stronger case, expressly provided for, and just noticed, of children born prior to any marriage; with the general policy of our law, which is much more favourable to bastards, than the law of England; with that policy which, in regulating descents, has considered as most worthy the claims of those who stand nearest in the affections of the last occupant, (and it is clear that the affections of a parent towards his child, do not at all depend upon the legal validity of his marriage,) must at once overrule the arguments drawn from the critical exposition of the word null, as alleged to be understood in some legal authors on this subject, and in some of our former acts. I admit that, generally, and in the total absence of opposing circumstances, a word used in a statute, will be understood in the sense in which it was used in a former statute, or in common law treatises on the same subject: but, in the case before us, this rule of interpretation is overpowered by a contrary construction, arising from a general view of the acts in question, on analogous cases, and from the liberal policy which has prevailed on this subject, since the period to which we are carried back for a ^definition of the word in question. I shall not be more particular in this critical view of the subject: but it is certain that, admitting the intention of the legislature to be as extensive as I suppose, more comprehensive words could not have been used to convey their meaning, when those words are liberated from the sense supposed to be annexed to them in remote times, and under a system far less liberal than that in which the term in question is now used.
It was said by one of the appellee’s counsel, that the construction I adopt is inadmissible, as tending to encourage bigamy. It was well said in answer, by one of the appellants’ counsel, that considerations of this kind, in relation to the offspring, form *911 no part of the inducements to marriage: But this is not all. The legislature itself has given the answer. That legislature certainty meant not to encourage fornication, or incestuous marriages, and yet it has expressly legitimated the offspring of both.
It was also said, by the same gentleman, that my construction would legitimate the children of a white man and a negro woman, where the marriage ceremony has taken place. The answer is easy and evident. The law concerning marriages is to be construed and understood in relation to those persons only to whom that law relates; and not to a class of persons clearly not within the idea of the legislature when contemplating the subjects of marriage and legitimacy.
It was also said, that in a case like the one before us, (admitting the contiguous residence of the first husband to the wife during her second coverture,) her children might claim two fathers. The answer is, that their legitimacy under the one, or the other marriage, would depend upon circumstances of access, &c., as in other cases; as in case of a single marriage. Those born during the existence of a lawful marriage are, prima facie, the children of that marriage; but that presumption is liable to be rebutted and destroyed by facts and circumstances, to be adjudged of by courts and juries. In the case before us, of a second and *void marriage, the second husband stands merely on the foot of a stranger; but, with respect to his children begotten by the wife of another, supposed to be his wife, our act steps in and changes the former law; it erects into legitimate children those who otherwise would have been bastards. This, however, depends upon the question of access. Our act has only laid down the general proposition: an exception from that proposition, exists in other cases, where the second husband had no access. In that case, the children, if begotten by a stranger, are bastards; if begotten by the first husband, they are then the legitimate children of the first marriage, which has rendered that access and those children lawful.
This diversity of legitimacy', I admit, is novel: but it is, at least, as reasonable that a father should be assigned by the verdict of a jury and judgment of a court, as by the election of the child; of which, an instance is not wanting under our laws.
I am consequently of opinion, that the judgment of the district court ought to be reversed.
FLEMING, Judge.
Both marriages are proved ; and the act of assembly legitimates the offspring of the second. I am therefore for reversing the judgment.
CARRINGTON, Judge.
Both marriages are proved; and as the act of assembly legitimates the issue of the second, the judgment of the district court must be reversed, and administration granted to the appellants.
LYONS, President — concurred.
Judgment reversed.